UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PEGGY A. GARDENHIRE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:05-CV-88-PRC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act [DE 36], filed by Frederick J. Daley, counsel for the Plaintiff, Peggy A. Gardenhire, on October 16, 2007. On October 30, 2007, the Commissioner filed a Defendant's Response to Plaintiff's Petition for Attorneys Fees Under the Equal Access to Justice Act. On November 7, 2007, the Plaintiff's attorney filed a Plaintiff's Reply in Support of Her Application for Attorneys' Fees Under the Equal Access to Justice Act. For the following reasons, the Court grants the Application but with relief different than that requested.

**PROCEDURAL BACKGROUND**

The Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 26, 2001, alleging disability since May 16, 2001. Her application was denied initially on October 18, 2001, and again upon reconsideration on March 12, 2002. On April 11, 2002, the Plaintiff filed a request for a hearing, which was first held on June 4, 2003, before Administrative Law Judge ("ALJ") Bryan Bernstein. Because the Plaintiff was without legal representation, ALJ Bernstein continued the hearing to afford her time to obtain counsel. On January 7, 2004, the Plaintiff appeared, *pro se*,

before ALJ Steven Neary.[1]  Vocational Expert ("VE") Leonard Fischer testified at the hearing.  On July 28, 2004, the ALJ issued a decision finding that although the Plaintiff had severe impairments, she nevertheless was not disabled within the meaning of the Social Security Act because she retained the residual functional capacity ("RFC") to do a moderate range of jobs in the economy.  Thereafter, the Plaintiff filed a request for review, which on January 7, 2005, the Social Security Administration Appeals Council denied.

On March 7, 2005, the Plaintiff filed a *pro se* Complaint in this Court, seeking review of the Commissioner's final decision.  On August 18, 2005, counsel entered an appearance on behalf of the Plaintiff.  On September 12, 2006, the Court issued an Order reaffirming the ALJ's decision in all respects.  On September 27, 2006, the Plaintiff filed a Motion to Alter or Amend Judgment.  On July 18, 2007, the Court issued an Order granting the Plaintiff's Motion to Alter or Amend Judgment and remanded the case for further administrative proceedings.  On July 18, 2007, the Court Clerk entered final judgment in this matter.

On October 16, 2007, the Plaintiff filed her Application for Attorneys' Fees Under the Equal Access to Justice Act ("EAJA").  The Application is now fully briefed and before the Court.

## ANALYSIS

In the Application for Attorneys' Fees, the Plaintiff's counsel requests an award of fees at an hourly rate of $156.25 for attorney work performed in 2005, $160.00 for attorney work performed in 2006, and $165.00 for attorney work performed in 2007, under the EAJA, representing the cost of living adjustments allowed by 28 U.S.C. § 2412(d)(2)(A)(ii) when employing the "All items"

---

[1] Hereinafter, unless otherwise specified, "ALJ" refers to ALJ Neary, who presided over the January 7, 2004 hearing.

figure provided by the Consumer Price Index.[2] The Plaintiff's attorney also requests an hourly rate of $100.00 for the work performed by law clerks Suzanne Blaz and Barbara Long. Finally, the Plaintiff's attorney requests compensation for the time spent preparing the instant Application for Attorneys' Fees.

In his opening Motion, counsel for the Plaintiff requests attorneys' fees in the amount of $15,076.06, which represents 10.25 attorney hours at the rate of $156.25 per hour in 2005 (totaling $1,601.56); 12.2 attorney hours at the rate of $160.00 per hour in 2006 (totaling $1,952.00); 1.5 attorney hours at the rate of $165.00 per hour in 2007 (totaling $247.50); and 112.75 law clerk hours at the rate of $100.00 per hour (totaling $11,275.00). In his reply brief, the Plaintiff's attorney requests an adjusted total amount of attorneys' fees of $15,558.56, to include 0.5 attorney hours at the rate of $165.00 (totaling $82.50), and 4.0 law clerk hours at the rate of $100.00 per hour (totaling $400.00) spent preparing the reply brief.

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the [Commissioner] was substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 154 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Pursuant to 42 U.S.C. § 2412(d)(1)(B), a fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the applicant is "eligible to receive an award;" (3) a showing of "the amount sought,

---

[2] Three attorneys performed work on behalf of the Plaintiff in this case. However, only a single attorney, Frederick J. Daley, entered his appearance in this matter on the Plaintiff's behalf. In this Opinion and Order, the Court refers to Plaintiff's counsel as a single attorney.

3

including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed;" and (4) an "alleg[ation] that the position of the [Commissioner] was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this case, it is uncontested that the Plaintiff was the prevailing party and that she and her attorney filed the fee application in a timely manner. There are now two issues before this Court: (A) whether the position of the Commissioner was "substantially justified;" and (B) whether the fees requested by the Plaintiff's attorney are reasonable. The Court will address the issues separately.

### A. Substantially justified

Considering whether the Commissioner was substantially justified, the court is to analyze the "position of the [Commissioner]", which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct. 28 U.S.C. § 2412(d)(2)(D); *Golembiewski*, 382 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). The trial court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Golembiewski*, 382 F.3d at 724 (citing *Hallmark Constr.*, 200 F.3d at 1080). The court should evaluate the factual and legal support for the government's position throughout the entire proceeding. *See Hallmark Constr.*, 200 F.3d at 1080. A court need only make one determination regarding the Commissioner's conduct during the entire civil action. *Jean*, 496 U.S. at 159; *Jackson v. Chater*, 94 F.3d 274, 278

4

(7th Cir. 1996). "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus*, 17 F.3d at 1036. The court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue. *See Hallmark Constr.*, 200 F.3d at 1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Golembiewski*, 382 F.3d at 724. Expanding on this definition, the United States Court of Appeals for the Seventh Circuit stated, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 568-69. The Commissioner bears the burden of proof in showing that he had a substantially justified litigation position. *See Pierce*, 487 U.S. at 565; *Golembiewski*, 382 F.3d at 724.

As a starting point in its analysis, the Court summarizes its September 12, 2006, order that affirmed the ALJ's decision in all respects, and its July 18, 2007, order that remanded this case for further proceedings. The case originally presented four issues on review: (1) whether the ALJ obtained a valid waiver of counsel from the *pro se* Plaintiff; (2) whether taking into account the Plaintiff's *pro se* status, the ALJ met his duty to fully and fairly develop the record and render an RFC determination; (3) whether the hypothetical presented by the ALJ to the vocational expert

5

("VE") met the ALJ's burden at Step Five; and (4) whether the ALJ made a proper credibility finding. The Court reviewed the ALJ's decision and analysis and affirmed his decision on all four issues.

Subsequently, the Plaintiff moved to alter or amend the Court's judgment affirming the ALJ's decision, and argued that the Court failed to consider the following two issues, which the Plaintiff argued she raised in her original motion seeking remand: (1) that the ALJ failed to engage in an adequate mental RFC analysis; and (2) that the Commissioner failed to meet his burden at Step Five. The Court found that it had failed to address these issues. Analyzing the first issue, the Court found that the ALJ failed to comply with the Regulations and consider itemized functions provided in Listing of Impairment 12.00 when analyzing the Plaintiff's mental RFC, and thus failed to comply with 20 C.F.R. § 404.1520a and SSR 96-8p. With regard to the second issue, the Court determined that the ALJ and the Commissioner complied with the legal requirements for a Step Five analysis. The Court ultimately remanded the matter for further administrative proceedings with regard to the Plaintiff's mental RFC.

The Plaintiff's attorney argues that the Commissioner's position was not substantially justified because he supported the flaw in the ALJ's decision, which the Court found justified remand. The Plaintiff's attorney contends that the failure to make a detailed mental RFC finding violated the requirements of SSR 96-8p and 20 C.F.R. § 404.1520a, and the failure to incorporate the Plaintiff's special technique mental limitations into the ALJ's hypotheticals violated the requirements of 20 C.F.R. § 404.1520a(e)(2). In response, the Commissioner argues that his position was substantially justified and argues that the Court must examine his position as a whole. The Commissioner emphasizes that the Court initially affirmed the ALJ's decision in all respects;

6

and that although the case was ultimately remanded, he still prevailed on one claim. The Commissioner argues that he had rational grounds for taking the position he did on the lone issue that was remanded.

The Plaintiff's attorney argues that the Commissioner's "argument counting," whereby he allegedly attempts to legitimize his litigation and prelitigation strategies by tallying the number of arguments that the Court affirmed on review, is not a valid reason to find that his position was substantially justified. This strategy of tallying successful arguments as a substantive argument for substantial justification is disfavored by courts within this circuit. *See Brown v. Barnhart*, No. 00 C 816, 2002 WL 1377440, at *3 (N.D. Ill. June 24, 2002); *Mallette v. Sullivan*, No. 87 C 4873, 1990 WL 19894, at *3-5 (N.D. Ill. Feb. 15, 1990). Here, the Commissioner plainly argues that "[w]ith the Court accepting the government's position on at least two claims, the Commissioner was substantially justified in defending this matter and therefore this Court should decline to award Plaintiff EAJA fees." Def.'s Resp. Br. 4. The Court finds this argument to be unpersuasive, and will instead consider whether the Commissioner's prelitigation and litigation position had a reasonable basis in the law and the facts.

*Lechner v. Barnhart* presented the United States District Court for the Eastern District of Wisconsin with a factual setting nearly identical to the instant case. 330 F. Supp. 2d 1005 (E.D. Wis. 2004). In *Lechner*, the ALJ failed to assess the plaintiff's mental abilities on a function-by-function basis under 20 C.F.R. § 404.1545(c) and instead proceeded to directly assign vocational categories. In addition, the ALJ offered no explanation for and cited no medical evidence supporting her mental RFC assessment. The court found that SSR 96-8p requires an ALJ to first identify the plaintiff's functional limitations or restrictions and assess his or her work-related abilities on a

7

function-by-function basis. *See id.* at 1010. Finding that the ALJ failed to comply with the requirement of 96-8p and offered no explanation or citation to supportive medical evidence for her RFC assessment, the Court determined that the Commissioner's position on the issue could not be considered substantially justified. *See id.*

*Lechner* is however distinguishable from the instant case. In *Lechner*, the mental RFC issue was one of two issues for which the court found the Commissioner lacked substantial justification. In ultimately determining that the Commissioner's position was not substantially justified, the court considered the two deficient issues in combination. *See id.* at 1010. Here, the Commissioner only identifies one issue for which the Commissioner lacked substantial justification. Remanding a case for further review or development of a single issue does not preclude an award of EAJA fees to the prevailing counsel, but the Court does evaluate the Commissioner's position as a whole and takes all issues into account. *See Kopulos v. Apfel*, No. 98 C 4115, 1999 WL 1565201, at *2 (N.D. Ill. Nov. 15, 1999) (Evaluating the plaintiff's attorney's request for EAJA fees, the court held "[s]imply because plaintiff was successful in having her claim remanded on one issue does not make the Commissioner's position substantially justified nor does it restrict payment of attorney fees to the time spent on just that argument[]", and awarded fees because the ALJ failed to comply with the requirements of SSR 96-6p).

In this case, the ALJ failed to consider the Plaintiff's severe mental impairments in his RFC analysis, specifically failing to work through the itemized functions listed in Impairment 12.00, paragraphs B and C. By failing to perform a complete mental RFC analysis, the ALJ did not comply with 20 C.F.R. § 404.1520a or SSR 96-8p. The requirements of SSR 96-8p are clearly defined. SSR 96-8p describes the RFC assessment as "a function by function assessment based upon all of the

8

relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. "The RFC assessment must be based on *all* of the relevant evidence in the case record." *Id*. With respect to psychiatric conditions, SSR 96-8p "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment" in certain categories identified in the Regulations. *Id*. In addition, 20 C.F.R. § 404.1520a describes the special technique that an ALJ must follow in evaluating mental impairments. The regulation identifies four functional areas under which an ALJ is to rate a functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

Here, the ALJ found that the Plaintiff had severe anxiety and depression impairments. However, in his RFC analysis, the ALJ failed to discuss or otherwise account for those limitations. Therefore, the ALJ failed to complete a mental RFC analysis as required by SSR 96-8p and 20 C.F.R. § 404.1520a. The Commissioner supported the ALJ's mental RFC analysis throughout prelitigation and litigation. Considering the level of error that must be committed by the Commissioner in pursuing a certain position to trigger an adverse award of attorney's fees, the Seventh Circuit has opined, "Strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees." *Golembiewski*, 382 F.3d at 724 (citing *Marcus*, 17 F.3d at 1038).

The Court finds strong language against the Commissioner's position supporting the ALJ's failure to consider the Plaintiff's severe mental impairments in his mental RFC analysis is contained in SSR 96-8p, 20 C.F.R. § 404.1520a, and *Lechner*. The ALJ's failure to consider the Plaintiff's documented severe mental limitations finds no reasonable basis in the law and caused the Court to state in its July 18, 2007, Opinion and Order remanding the case that "[t]he ALJ failed to consider

9

any of the criteria or symptoms listed in Listing of Impairment 12.00, paragraphs B and C." *Gardenhire v. Astrue*, 2:05-CV-00088-PRC, at 18 (N.D. Ind. July 18, 2007) (opinion and order remanding case). Thus, while the Court views the totality of the Commissioner's position throughout prelitigation and litigation, the ALJ's failure to account for the Plaintiff's severe mental limitations when considering what jobs she could perform, and the Commissioner's position supporting that failure, is contrary to well established law. As a result, the Court finds that the Commissioner's position is not substantially justified.

### B. Fees

The Court's July 18, 2007, Order reversing the Commissioner's decision and remanding this case for further proceedings renders the Plaintiff a prevailing party for EAJA fees purposes. *See Shalala v. Schaefer*, 509 U.S. 292, 300-02 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir. 1995). The Plaintiff's attorney now has the burden of proving that the EAJA fees he seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); 28 U.S.C. § 2412(d)(1)(B). In *Hensley*, the Supreme Court explained that "'[h]ours that are not properly billed to one's client are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). As a result, the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 437. The amount of a fee award is left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.*

Here, the Plaintiff's attorney applies for $15,558.56 in fees resulting from 24.45 hours of attorney work and 116.75 hours of law clerk/paralegal work, which he argues was a reasonable

10

amount of time spent working on this case. The Commissioner disagrees, and argues that the fees are excessive. The Commissioner does not protest the hourly rate sought for attorney work time but does object to the overall fee requested and argues that it is far in excess of the average EAJA fee awarded in this jurisdiction. The Commissioner contends that this case was not particularly complex and did not present a novel issue of law. Thus, the Commissioner argues that this case does not warrant an abnormally large fee. The Commissioner also argues that the $100 hourly rate sought for law clerk work is excessive and requests that it be reduced to $85 per hour.

Initially, the Court notes that the Plaintiff's attorney's itemized time sheet fails to account for one hour of law clerk/paralegal work. The Plaintiff's attorney seeks compensation for 116.75 hours of law clerk/paralegal work; however, the itemized time sheet, after factoring in the additional time spent on the EAJA Motion and reply brief, only accounts for 115.75 hours of law clerk/paralegal work. Therefore, the Court subtracts one hour of paralegal/law clerk work from the amount of compensable work time that the Plaintiff's attorney is able to recover.

Returning to the Commissioner's argument that the Plaintiff's attorney's requested EAJA fees are far in excess of fees typically awarded to prevailing social security plaintiffs in this jurisdiction, the Commissioner argues that twenty to forty hours of billed attorney time is typical of the amount awarded in similar cases. For support, the Commissioner cites a number of cases decided by courts outside this circuit. *See e.g. Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 420 (6th Cir. 1990); *Chandler v. Sec'y of Health & Human Servs.*, 792 F.2d 70, 73 (6th Cir. 1986). In response, the Plaintiff's attorney cites the United States District Court for the Northern District of Illinois' decision in *Banks v. Barnhart*, in which the court rejected the Commissioner's argument that the EAJA fees sought by the plaintiff "appear excessive." No. 01 C 382, 2003 WL

11

22019796, at *5-7 (N.D. Ill. Aug. 26, 2003). The Court referred to the United States Supreme Court's decision in *Hensley*, which the court found requires "[c]ounsel for the prevailing party [to] make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . ." *Banks*, 2003 WL 22019796 at *6 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 570 n. 4 (1986) (citing *Hensley*, 461 U.S. at 436). After reviewing the plaintiff's attorney's attached time sheet and finding no sign of unreasonable billing, the court awarded the full amount of fees sought and found that the Commissioner's broad allegation that the hours requested were excessive, without more support, was unpersuasive. *See Banks*, 2003 WL 22019796 at *5-7.

Thus, based on Supreme Court and district court precedent, a general argument that the fee amount requested by the Plaintiff's attorney is unreasonable is not a prevailing argument. The Commissioner must identify work of the Plaintiff's attorney that was excessive, redundant, or otherwise unnecessary. *See Rivera*, 477 U.S. at 570 n. 4 (citing *Hensley*, 461 U.S. at 434). Here, the Court thoroughly reviewed the Plaintiff's attorney's itemized time sheet. The Court does not find any entries that reveal excessive, redundant, or otherwise unnecessary work, and the Commissioner does not identify any. The billing statement is a two page itemized list of all time spent on the Plaintiff's case and breaks the itemized descriptions of work done into chronological order, further dividing the work into separate sections for work done by each attorney or law clerk/paralegal who worked on the case. Reviewing each attorney and law clerk/paralegal's work on the case, the Court can find no incidents of redundant work. Nor does the Court see any time entries that are unnecessary. Rather, the Court finds a detailed set of time entries revealing a methodical progression of representation in this case. The time entries describe a substantial amount of time researching legal issues and drafting briefs. However, the Court cannot conclude that the

12

time spent by the Plaintiff's counsel and his employees on research and drafting was per se excessive. The task listed under each time entry is a legitimate activity progressing toward an end goal of filing a brief, resolving a certain issue, and ultimately, toward resolving this litigation.

The Court specifically examined the time sheet for entries after the Court's initial order affirming the ALJ's decision and prior to the Court's order reconsidering its initial order and remanding the case. The Court is aware that issues drafted in connection with the Plaintiff's initial brief seeking remand were the same as those contained in her motion for reconsideration. The plaintiff's counsel should not be compensated twice for briefing the same issue. However, the Court found no examples of double billing in this case.

In support of the fees requested, the Plaintiff's counsel argues that, contrary to the Commissioner's contention, the issues in this case were hardly routine. The Plaintiff's attorney states that the 351 page administrative record in this matter contained thorough treatment records spanning eight years of medical treatment and contained extensive handwritten documentation. In addition, the Plaintiff's attorney argues that the legal arguments in support of remand did not involve a great amount of citation to court decisions, and thus, were not cut and paste arguments from previous briefs. Instead, the analysis was fact intensive and required a great deal of analysis.

The Court finds, after reviewing the familiar docket in this case, that the Plaintiff's medical history contained in the record is detailed but not uncommonly complex. The legal issues, for the most part, are among those regularly seen at the district court level in social security cases (step five analysis, improper credibility finding), but did require the Plaintiff's attorney to apply the Plaintiff's medical history, and other facts contained in the record, to a legal analysis. Undertaking this analysis, the Plaintiff's attorney filed a thirty-four page opening brief in support of remand, which

13

is nearly ten pages longer than the local procedural rules typically allow for. The Plaintiff's attorney also filed a twenty-two page reply brief in support of remand, a thirteen page brief in support of the Plaintiff's Motion to Alter or Amend, a seven page brief in support of EAJA fees, and a twenty page reply brief in support of EAJA fees. From this backdrop, the Court does not entirely agree with either the Commissioner's or the Plaintiff's attorney's summation of the complexity of this case. The Court finds that this case presented a detailed factual record and several involved legal issues for review, which the Plaintiff's attorney extensively briefed for the Court's review. However, there is nothing extraordinary about the issues presented by this case.

The Commissioner also argues that the Plaintiff's attorney inefficiently used law clerks/paralegals such that his representation resulted in a greater fee request of the Government. In support, the Commissioner relies on *Palmer v. Barnhart*, in which the court examined the distribution of work by the plaintiff's counsel in that case and found, "Certainly, it would have been far more efficient for [counsel] to spend a bit more time and simply write the district court brief himself." 227 F. Supp. 2d 975, 979 (N.D. Ill. 2002). *Palmer* is distinguishable from the instant case. The *Palmer* opinion cited by the Commissioner, one of several opinions in the case, was before the district court for a second time, having first been reversed on the merits by the Seventh Circuit. The Commissioner objected to 18 hours of law student time spent working on a district court brief when the attorney working on the case spent 6.9 hours reviewing and revising the brief and he had already written a brief to the Appeals Council covering largely the same material and arguments. In the factual setting presented in *Palmer*, the court found that the work of the attorney and law student on the district court brief was excessive, redundant, or otherwise unnecessary, and therefore reduced the law student's fees by half. *See id.*

14

Here, the Commissioner does not argue or seemingly have any facts to support a theory that the law clerks' work was redundant or otherwise unnecessary. Instead, the Commissioner submits the general argument that the law clerks' work was excessive because they spent too much time summarizing records and drafting arguments. Thus, the specific holding in *Palmer* is unpersuasive. The Court does acknowledge the general point of law that fees sought for unnecessary work should be subtracted from any fees ultimately awarded.

The Court finds that the work time disputed by the Commissioner represents reasonable use and allocation of attorney and non-attorney time in a social security, or other, litigation case. The law clerks billed the majority of hours in this case, 115.75 hours to 24.45 attorney hours. The law clerks and attorneys did not spend a great deal of time meeting with each other or reviewing each other's work in this case. Only 1.75 law clerk/paralegal hours were spent conferring with an attorney to discuss case strategy and only eight attorney hours were spent either reviewing a law clerk's work or assisting a law clerk. Based on these billing statements, the Court finds that the Plaintiff's attorneys and law clerks reasonably allocated their time and efficiently advocated the Plaintiff's case. The billing practices seen in this matter are routine legal practice and not of a sort that can be found to be excessive, redundant, or unnecessary.

Next, the Commissioner argues that the hourly rate billed by the Plaintiff's law clerks should be reduced from $100. According to the Commissioner, $85 is an appropriate hourly rate. In support of his argument, the Commissioner identifies two cases in which courts in this circuit have found that an hourly rate of $100 per hour for law clerk work to be excessive. *See Nunez v. Barnhart*, No. 2:04cv453 (N.D. Ind. July 31, 2006); *Samuel v. Barnhart*, 316 F. Supp. 2d 768 (E.D. Wis. Apr. 29, 2004). In *Samuel*, a case involving the same plaintiff's counsel as the instant case,

15

the Commissioner challenged the plaintiff's request that law clerks, including one of the same law clerks involved in this matter, be awarded $100 per hour for time spent working on his case. *See* 316 F. Supp. 2d at 780. The commissioner requested that the fee be reduced to $25 per hour. The court, in its April 29, 2004 decision, ultimately reduced the hourly rate awarded to the plaintiff's law clerks to $85 per hour, not because of their talents, which the court found considerable, but due to their lack of relevant experience. *See id*. at 781.

The Plaintiff responds by citing a number of cases in which courts in this circuit have awarded paralegals or law clerks fees of $100 per hour for work in social security cases. The Commissioner recognizes these cases but argues that the Court should rely on the precedent cited by the Commissioner instead. Militating against the Commissioner's argument are the facts of *Samuel*, the case the Commissioner relies on. During *Samuel*, law clerk Suzanne Blaz, who worked on both that case and the instant matter, was a trained paralegal about to begin law school. Several years later, while working on this case, Suzanne Blaz was a law student with additional experience in the law who had worked for Attorney Daley on social security matters for more than four years. Suzanne Blaz's several years of additional experience suggests that this Court, if anything, increase the hourly fee awarded for her work. Barbara Long, the other law clerk who performed work for the Plaintiff, was also enrolled in law school during her work on this case, and according to her resume, all of the 100.75 hours she billed in this matter were as a law school student. In addition, the law clerks drafted the Complaint and much of the briefing in this matter. Thus, their work was not of an administrative nature and was instead substantive work, of a type that is normally done by an attorney.

16

The Plaintiff's attorney also relies on several secondary sources to support his fee request. The Laffey Matrix, a survey of paralegal billing rates, provides that the government's market rate for law clerks in 2005 was $115 per hour. *See Samuel*, 316 F. Supp. 2d at 780. The *Samuel* court explained that the Laffey Matrix may be used at least "as a guide to the type of rate the government regularly accepts for paralegal and law clerk work," noting that the Matrix describes rates for the Washington D.C. area. *Id.* at 781.

With regard to the Chicago market specifically, the Plaintiff's attorney points to the 2005 Survey of Salaries and Benefits produced by the Illinois Paralegal Association. The Survey provides that paralegals in Cook County, Illinois, with less than two years of experience have hourly billing rates between $75 and $165 and paralegals with between two and five years of experience have hourly billing rates between $80 and $155. *See* Pl.'s Br. Ex. E at 20. Despite the questionable statistic that a paralegal with less than two years of experience can bill more than a paralegal with five years of experience, the survey's message is clear, and a billing rate of $100 per hour is well within a Chicago paralegal's billing range. The Plaintiff's attorney also relies on the National Association of Legal Assistants 2004 National Utilization and Compensation Survey Report, which states that in 2004, paralegals in the Great Lakes region, which encompasses Illinois, averaged a $95 billing rate. *See* Pl.'s Br. Ex. F at 4. Here, the law clerks performed their work in Chicago in 2005. Thus, the geographic and temporal setting of the work performed by the Plaintiff's attorney's law clerk weigh in favor of a relatively high billing rate.

Taking into account the reasonable billing practices and work allocation, the law clerks' experience, and the comparatively expensive market of Chicago, the Court finds that $100 per hour is a reasonable billing rate for both law clerks who worked on behalf of the Plaintiff in this matter.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice Act [DE 36] **but with relief different than that requested**. The Court awards the Plaintiff's attorney a total of $15,458.56 in EAJA fees. The Court further **ORDERS** that the payment in the amount of $15,458.56 be made directly to the Plaintiff's attorney, Frederick J. Daley, Jr., in accordance with the Assignment of EAJA Fee agreement signed by the Plaintiff.

SO ORDERED this 20th day of December, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record